UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**AMY JO FOTH,**

    **Plaintiff,**

    v.                                                                                                      Case No. 22-CV-941-SCD

**COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,**

    **Defendant.**

## DECISION AND ORDER

        Amy Jo Foth applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* The district court remanded Foth's case in 2021, and an administrative law judge upheld the denial of her applications again later that year. Foth now seeks judicial review of the latest decision. Upon careful review of the record, I find substantial evidence supports the ALJ's decision with respect to Foth's second and third arguments regarding certain medical and opinion evidence in the record. However, I agree with Foth that the ALJ committed reversible error in assessing Foth's subjective testimony about her daily activities. Accordingly, I will reverse the decision denying Foth disability benefits and remand the matter for further proceedings.

## BACKGROUND

**I.**     **Personal and Medical Background**

        Foth worked in a variety of jobs prior to applying for social security benefits. R. 720. The vocational expert (VE) classified Foth's roles as follows: data entry clerk, mortgage loan processor, bookkeeper, shoe salesclerk, customer relations clerk, account clerk, dispatcher,

security guard, and cleaner. R. 1790. Foth last worked full-time in April 2011 as a mortgage loan processor. R. 720, 2049. She has since attempted part-time childcare work for a friend, but it left her too exhausted. R. 2049. Foth also received room and board from her parents for serving as her mother's caregiver from September 2012 until her mother's death in February 2015. R. 1812-13. She explained that she was able to care for her mother up until her alleged disability onset date (February 6, 2015) because she had assistance from her father and could nap when her mother napped. R. 1821.

Foth participated in two hearings in connection with her applications for benefits—in 2018 and 2021. R. 169-215, 1803-33. At both hearings, Foth testified that she was living with her father, whom she relied on financially and for most household chores. R. 196, 198, 200-01, 1811, 1816. She ate mostly prepared foods and used paper plates. R. 201. Foth explained that she seldom went shopping but used a motorized cart when she did. R. 192. She was able to drive occasionally but limited her medication if doing so. R. 192-93, 1817.

Foth testified that she was diagnosed with fibromyalgia in 2010[1] and received a pacemaker in 2014. R. 1820. She described her fibromyalgia pain as occurring "[f]rom the tips of [her] toes to the ends of [her] hair." R. 182. At the 2018 hearing, she testified that her average pain on a scale of one to ten sat at about a six, while good and bad days ranged from four to nine. R. 183-84. Foth also testified in 2018 to experiencing "fibro fog," which she described as an inability to get her brain to focus, as well as an average of two to three fibromyalgia flares per month. R. 184-85. At the 2021 hearing, Foth testified that her fine

---

[1] Foth's 2018 pre-hearing brief and the provided medical records indicate that she was diagnosed with fibromyalgia in February 2012. R. 716, 1151-53.

motor skills had decreased to the point that she gave up knitting, no longer wrote letters, did not use a computer, and generally ate finger foods. R. 1823-24.

Foth also has a history of post-traumatic stress disorder, anxiety, and depression, which she managed with medication and mental health therapy. *See, e.g.*, R. 557, 3170-82. Foth is considered obese based on her body mass index, which further contributes to her generalized pain and reduced capacity to work. *See* R. 1341, 1784-85. Additional history of these and Foth's other ailments will be addressed as relevant.

## II.  Procedural Background

In 2016, Foth completed a Title II application for a period of disability insurance benefits. R. 429-32. Foth also filed a Title XVI application for supplemental security income. R. 433-39. In both applications, Foth alleged disability beginning on February 6, 2015. R. 429, 433. Foth claimed that she became disabled and unable to work due to a variety of physical impairments, namely: fibromyalgia, irritable bowel syndrome (IBS) with gastroesophageal reflux disease, depression, anxiety, sick sinus syndrome, asthma, atrial tachycardia, and cardiac pacemaker. R. 248.

Foth's applications were denied initially and upon reconsideration. R. 245-46; 273-74. Foth filed a request for a hearing, and one was held before an ALJ on September 19, 2018. R. 169-215, 344-45. Foth testified at the hearing, as did Deena Olah, a vocational expert. R. 169. On October 31, 2018, the ALJ issued a written decision concluding that Foth was not disabled from her alleged onset date until the date of the decision. R. 144. After the Appeals Council denied Foth's request for review, Foth filed a complaint in district court. R. 1834-34, 1886. On February 12, 2021, the court issued a written decision concluding the ALJ erred in

considering Foth's subjective symptoms, resulting in reversal and remand of the Commissioner's decision. R. 1838-54.

On remand, a different ALJ held a hearing on August 11, 2021, and issued another unfavorable decision on December 6, 2021. R. 1773-1803. Applying the standard five-step analysis, the ALJ first determined that Foth had not engaged in substantial gainful activity since her alleged onset date. R. 1779. The ALJ determined at step two that Foth had five severe impairments: obesity, fibromyalgia, anxiety, depression, and PTSD. R. 1779. At step three, the ALJ determined that Foth did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a presumptively disabling impairment. R. 1780-82. The ALJ next assessed Foth's residual functional capacity (RFC)—that is, her maximum capabilities despite her limitations, *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). R. 1782-90. The ALJ found that Foth had the RFC to perform sedentary work with the following limitations:

> [T]he claimant cannot climb ropes, ladders, or scaffolds. She cannot work at heights or with hazards. The claimant is further limited to occasional stooping, crouching, kneeling, crawling, climbing ramps and stairs. Mentally, the claimant is limited to simple routine repetitive noncomplex work. She requires a fairly regular set of work duties and expectations. The claimant cannot tolerate public interaction and can have only occasional brief interaction with coworkers. She cannot tolerate strict time or high quota demands, tandem work, or teamwork. The claimant will also be off task less than 10% of the workday with 3 breaks.

R. 1403. At steps four and five, the ALJ determined that Foth could not perform any of her past relevant work but that there were a significant number of jobs existing in the national economy she could perform, such as table worker, ink printer, and tube clerk. R. 1790-92. Therefore, the ALJ concluded Foth was not under a disability during the relevant timeframe. R. 1792.

4

The Appeals Council declined to assume jurisdiction over the case after remand, making the latest ALJ decision the final decision of the Commissioner. R. 1766-72. On August 16, 2022, Foth filed this action seeking judicial review of the Commissioner's decision denying her claim for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 7, 8. Foth filed a brief in support of her disability claim, ECF No. 13; the Acting Commissioner of the Social Security Administration filed a brief in support of the ALJ's decision, ECF No. 19; and Foth filed a reply brief, ECF No. 22.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (other citations omitted)). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also

5

supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

Conversely, the ALJ's decision must be reversed "[i]f the evidence does not support the conclusion," *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)), and reviewing courts must remand "[a] decision that lacks adequate discussion of the issues," *Moore*, 743 F.3d at 1121 (citations omitted). Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if her decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003).

In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). Judicial review is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISCUSSION

Foth argues the ALJ erred in three respects: (1) determining the impact of Foth's daily activities; (2) evaluating Foth's fibromyalgia for the purposes of determining her RFC; and (3) assessing the weight afforded to the two opinions provided by Foth's treating physician.

### I. Daily Activities

The ALJ concluded Foth's daily activities "tend to support [Foth's] ability to perform a reduced range of sedentary, unskilled work." R. 1787. Foth argues that her testimony about daily activities does not support an ability to perform "full-time, sustained work" and, therefore, the ALJ's contrary finding constitutes an improper credibility determination. *See* ECF Nos. 13, 22; *see also Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016) (noting that the court has "repeatedly cautioned against equating daily living activities with the ability to perform a full day of work"). The Commissioner asserts that the ALJ properly analyzed Foth's subjective allegations in light of conflicting medical evidence. *See* ECF No. 19.

The ALJ addressed Foth's daily activities as follows:

> The undersigned further considered the claimant's daily activities. . . . [T]he overall evidence tends to show that the claimant has fairly typical daily activities. She testified that her father helps her with a lot of household chores; however, when necessary, she completes basic chores in the home and yard. (Testimony). Treatment records show that she used to walk daily and then every other day. (Ex. 1F, pg. 15, 63). Claimant has reported going shopping at Walmart, going out to lunch, attending a graduation, attending the opening of a casino, babysitting for a friend, going to a garage sale and thrift shopping. (Ex. 30F, pg. 4, 6, 7). These activities considered in combination with treatment records showing many normal physical and mental examinations tend to support the claimant's ability to perform a reduced range of sedentary, unskilled work. The undersigned allowed for additional time off task to fully account for the claimant's subjective complaints.

R. 1787. From this excerpt, it is clear the ALJ was not suggesting Foth's activities alone demonstrated an ability to work full-time. *See id.* However, Foth's allegation rings true: the

7

ALJ failed to build a logical bridge from Foth's daily activities to the conclusion about work ability. *See Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016) (noting that the court has "repeatedly cautioned against equating daily living activities with the ability to perform a full day of work"). The ALJ was well-within her bounds to consider Foth's daily activities. *See* Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1020935, at *14169 (Mar. 16, 2016). But the ALJ needed to tie her conclusion to Foth's functional abilities rather than make a simple inference that Foth could work full-time:

> As courts have acknowledged, there is a critical difference between an ALJ improperly saying, "The claimant can perform this range of activities; therefore she can work" . . . and an ALJ reasonably saying, "The claimant can perform this range of activities, therefore she can do more than she claims, and is not credible."

*Brandt v. Saul*, No. 20-C-1471, 2022 WL 79850, at *16 (E.D. Wis. Jan. 7, 2022) (internal citations omitted).

As Foth points out, many of the daily activities she described, such as outings for lunch and shopping, could be performed in short duration or with necessary breaks. *See* ECF No. 13. The Commissioner contends that "[t]he ALJ merely discussed Plaintiff's activities in the context of analyzing her subjective complaints and pointed out that her activities tended to indicate greater functional abilities than she alleged." The ALJ failed to take that second step though, as she did not articulate how Foth's activities related to her functional abilities or what limitations were not as severe as Foth alleged. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (observing the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled").

Notably, the daily activities the ALJ cited are quite modest. Being able to shop occasionally, or to visit a casino or garage sale, simply places Foth among the millions of individuals who maintain the ability able to walk or drive a car. That group of individuals includes those who are properly deemed disabled. Put another way, one would expect many (or most) disabled individuals to have the ability to partake in the kinds of activities Foth does, which means the activities do not undercut her claim of disability. "The Commissioner argues that Villano's testimony supported the ALJ's conclusion that she could perform a full range of sedentary work because she did housework, shopped, drove short distances, walked her dogs, and played with her grandchildren. But limited daily activities such as Villano's do not contradict a claim of disabling pain." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009). As another court noted, "[i]t is unclear how these extremely modest daily undertakings . . . would undermine the Plaintiff's assertion that she cannot work a full-time job. In fact, her limited activities are exactly the sorts of pursuits one would expect someone who is disabled to engage in. In other words, the fact that her activities were so minimal supports rather than undermines the conclusion that Plaintiff is disabled." *Leverance v. Astrue,* No. 09-C-559, 2010 WL 3386508, at *4 (E.D. Wis. Aug. 25, 2010). Accordingly, I will reverse the ALJ's decision and remand for proper consideration of any discrepancies that may arise from Foth's daily activities.

## II. Evaluation of Fibromyalgia

Foth argues the ALJ improperly relied on objective physical examinations alone when evaluating the impact of her fibromyalgia on the RFC. *See* ECF Nos. 13, 22. Foth contends that remand is necessary to evaluate additional, unconsidered fibromyalgia symptoms in accordance with Social Security Ruling 12-2p; Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869 (July 25, 2012) (hereinafter, Ruling 12-2p). *See* ECF Nos. 13, 22. The

9

Commissioner contends that the ALJ properly relied on objective medical findings to discount Foth's subjective complaints of fibromyalgia-related pain. *See* ECF No. 19.

Foth's point about the weight of objective findings is well taken: "[c]ourts have recognized that often there is no objective medical evidence indicating the presence or severity of fibromyalgia." *Apke v. Saul*, 817 F. App'x 252, 257 (7th Cir. 2020); *see also Sarchet*, 78 F.3d at 307 ("Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced."). While Foth acknowledges that objective medical findings may nonetheless be considered in the RFC assessment, she maintains that the characteristics of fibromyalgia require a more nuanced analysis. *See* ECF Nos. 13, 22. Foth suggests that we should look to the criteria that Ruling 12-2p identifies for evaluating fibromyalgia. *See* ECF No. 13; Ruling 12-2p, 2012 WL 3104869, at *2-3. The Commissioner argues that Ruling 12-2p's purpose is limited to determining whether fibromyalgia constitutes a medically determinable impairment (MDI)—a question that the ALJ answered affirmatively when she found Foth's fibromyalgia to be a severe impairment. *See* ECF No. 19; R. 1779. Foth responds that Ruling 12-2p goes further and generally addresses how fibromyalgia is evaluated in disability claims such that the diagnostic criteria should be reviewed in the RFC context. *See* ECF No. 22; Ruling 12-2p, 2012 WL 3104869, at *1 ("This ruling provides guidance on . . . how we evaluate fibromyalgia in disability claims). I agree with Foth's general premise that Ruling 12-2p's scope is broader than the MDI issue because the ruling also addresses the subsequent steps in the evaluation process. *See* Ruling 12-2p, 2012 WL 3104869, at *5-6. However, I find this scope does not lead to Foth's desired

10

result because Ruling 12-2p's directives clearly distinguish between the MDI and subsequent steps. *See id.* at *2-6.

Ruling 12-2p outlines general and specific criteria for determining whether a person has an MDI of fibromyalgia. *See* Ruling 12-2p, 2012 WL 3104869, at *2-3. The ruling goes on to separately explain how an ALJ is to "evaluate a person's statements about his or her symptoms and functional limitations." *See id.* at *5. In this regard, the ruling simply explains that the ALJ should follow the same two-step process used to evaluate all subjective allegations. *See id.* Those two steps include: (1) determining whether "medical signs and findings . . . show the person has an MDI(s) which could reasonably be expected to produce the pain or other symptoms alleged" and (2) "evaluat[ing] the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." *Id.* Ruling 12-2p also acknowledges:

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

*Id.* at *5.

Upon careful review of the ALJ's decision, I find the ALJ followed the process outlined by Ruling 12-2p. *See* R. 1782-90. The ALJ found step one fulfilled but concluded Foth failed to satisfy step two because Foth's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 1784. The ALJ analyzed the evidence discussed in Ruling 12-2p, including Foth's daily activities, R. 1787;

11

medication and other treatment, such as physical therapy, that Foth has pursued, R. 1783-89; the medical records reflecting Foth's attempts to obtain medical treatment, R. 1784-1790; and statements by Foth's cousin and father about Foth's symptoms, R. 1790. Ruling 12-2p does not specifically require the ALJ to reanalyze the MDI diagnostic criteria when determining the RFC. *See Gebauer v. Saul*, 801 F. App'x 404, 410 (7th Cir. 2020) (observing that Ruling 12-2p limits the evidence an ALJ can use to diagnose fibromyalgia as an MDI but does not limit the evidence an ALJ can consider in evaluating the severity of the disease for purposes of determining an RFC).

Even so, the ALJ did address several fibromyalgia-related conditions that Foth claims were overlooked: IBS, R. 1779; mental impairments, R. 1785-87; and abdominal pain, R. 1779. *See* ECF No. 22. The ALJ also stated that she accounted for Foth's GI symptoms, R. 1779, and mental impairments, R. 1786, in determining Foth's RFC. Ultimately, it is not my role to reweigh the evidence. *See Freeman v. Astrue*, 816 F. Supp. 2d 611, 615 (E.D. Wis. 2011) ("This court cannot reweigh evidence or substitute its judgment for that of the ALJ."). Foth has not identified an error of law on this issue, and neither have I. Therefore, I will affirm the ALJ's decision with respect to the impact of Foth's fibromyalgia on her RFC.

### III. Treating Source Opinions

Foth argues that the ALJ should have afforded controlling weight to the two opinions provided by her treating physician, Dr. Todd Painton. *See* ECF No. 13. Dr. Painton provided opinions in 2018 and 2020, one before each of Foth's hearings with an ALJ. R. 1483-85, 3162-68. The Commissioner maintains that the ALJ provided "good reasons" for affording little weight to Dr. Painton's opinions. *See* ECF No. 19. For claims like Foth's that were filed before 2017, the opinion of a treating physician must be given controlling weight if it "is well-

12

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c); *Reinaas v. Saul*, 953 F.3d 461, 465 (7th Cir. 2020).

An opinion that is not entitled to controlling weight need not be rejected. Instead, the opinion is entitled to deference, and the ALJ must weigh it using several factors, including the length, nature, and extent of the claimant's relationship with the treating physician; the frequency of examination; whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; and whether the physician is a specialist. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1087 (E.D. Wis. 2009). Moreover, the ALJ must always give "good reasons" to support the weight she ultimately assigns to the treating physician's opinion. *See* §§ 404.1527(c), 416.927(c); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). Only "the most patently erroneous reasons for discounting a treating physician's assessment" require reversal. *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010) (citing *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)).

Foth correctly points out that the ALJ did not address each of the checklist factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ identified a lack of consistency between Dr. Painton's two opinions and with Dr. Painton's treatment records. *See* R. 1788. But the ALJ did not otherwise address factors like the nature and extent of the relationship between Foth and Dr. Painton. *See id.*; 20 C.F.R. §§ 404.1527(c), 416.927(c). However, it is well established that an ALJ need not explicitly consider every factor. *See Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013); *Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 415–16 (7th Cir. 2008).

13

In fact, I find no error of law in the ALJ's decision on this matter. Although Dr. Painton was Foth's primary care physician since 2017, the treating relationship and longitudinal history do not overcome the lack of supportability and consistency. *See* R. 1787-88. As the ALJ observed, the two opinions were not consistent with each other or supported by Dr. Painton's own treating records. *See id.* In the 2018 opinion, Dr. Painton determined that Foth could sit for two hours and stand or walk for less than two hours in an eight-hour workday, that she required two to three unscheduled breaks for one to two hours, and that she could rarely lift ten pounds. R. 1483-85. The opinion indicated the earliest date these limitations applied was "Now 1/31/18."[2] R. 1485. In the 2020 opinion, Dr. Painton's responses changed such that he believed Foth could sit for less than two hours, that she required an unscheduled break every hour for fifteen minutes, and that she could never lift ten pounds. R. 3165-67. The 2020 opinion indicated the earliest date these limitations applied was November 1, 2018. R. 3168. Although the opinions purport to cover overlapping time periods, Dr. Painton did not explain why he made different conclusions about Foth's postural and weight limitations or need for time off work. R. 1483-85, 3162-68.

Moreover, the ALJ reasonably identified a lack of support from Dr. Painton's treatment records, which not only fail to explain the differences between the opinions but also do not appear to sustain the opinions generally. The ALJ noted that Dr. Painton's opinions were merely checkbox forms, with the 2018 opinion containing "no explanation for the assigned limitations" and the 2020 opinion appearing to base many of the limitations on an old treatment note from February 2017. R. 1788. With respect to the 2018 opinion, the ALJ

---

[2] The Commissioner highlights that Dr. Painton's opinions indicate her limitations did not apply until 2018—almost three years after Foth's alleged onset date. *See* ECF No. 19. However, Foth points out that the ALJ did not identify this issue, and it is therefore improper for me to take it up on judicial review. *See SEC v. Chenery Corp.*, 318 U.S. 80, 92-95 (1943).

14

observed that Dr. Painton's records "support a diagnosis of fibromyalgia and chronic persisting pain, but also that this pain was managed with medication" and, furthermore, that Dr. Painton's treating records "focused on more transient issues" than Foth's fibromyalgia and "showed normal physical findings including strength." R. 1788. The ALJ likewise noted that Dr. Painton's treatment notes "demonstrate few, if any, abnormalities on many physical examinations," and therefore, do not support his 2020 opinion. R. 1788. For the reasons below, I find substantial evidence supports the ALJ's assessment of Dr. Painton's opinions.

When Foth established care with Dr. Painton in February 2017, Dr. Painton noted that Foth had a history of fibromyalgia and managed her pain with Tramadol because she did not tolerate other medications well. R. 1450-51, 1454. In July 2017, Dr. Painton noted that he was refilling Foth's Tramadol prescription despite her high dosage because he had low suspicion of abuse and believed that her upcoming breast reduction surgery would help with pain. R. 1431. Dr. Painton's notes from Foth's annual exam in November 2017 indicate that Foth experienced significant improvement in her upper back pain after the breast reduction surgery, although she continued to experience lower extremity pain. R. 1418. Foth saw Dr. Painton in June 2018 to follow up on a hospital visit involving her depression and noted that her fibromyalgia was flaring due to being at a concert the night prior. R. 1530, 1533-34. In August 2018, Foth saw Dr. Painton for a fibromyalgia flareup, but Dr. Painton determined that Foth was suffering from constipation and that a flareup was not too unusual during times of acute illness. R. 1520-24. Dr. Painton's notes from March 2020—just three months before his second opinion—indicate that Foth's fibromyalgia was "currently stable" and that Foth stated the Tramadol in conjunction with Tylenol was "very helpful." R. 2872. Overall, Dr. Painton's treatment notes consistently document normal motor strength, R. 1417, 1435, 2815, 2879,

15

and normal gait, R. 1417, 1435, 2815, 2857, 2872, 2879. Dr. Painton more frequently saw Foth for a variety of issues beyond her fibromyalgia, such as a panic attack, R. 1436; suspected dehydration, R. 1439-40; depression, R. 1538; bronchitis, R. 2536; an ankle injury, R. 2565; bloody stool, R. 2827; ear pain, R. 2834, 2852-57, 2880-85; and a colonoscopy follow-up, R. 2868-72.

Based on my comprehensive review of the record, I find substantial evidence supports the ALJ's conclusion that Dr. Painton's opinions are not adequately supported by his treatment records or consistent with each other. Therefore, I affirm the ALJ's decision to afford little weight to these opinions.

\*      \*      \*

In sum, only one of Foth's three claims merit reversal. The impact of Foth's daily activities should be reconsidered on remand because the ALJ failed to build a logical bridge when she equated Foth's activities of daily living with an ability to work full time. However, the ALJ did not reversibly err in assessing the medical evidence surrounding Foth's fibromyalgia in the RFC context or opinion evidence provided by Foth's treating physician.

## CONCLUSION

For all the foregoing reasons, I find that the ALJ committed reversible error in evaluating Foth's subjective testimony about her activities of daily living. I find substantial evidence supports the ALJ's decision regarding Foth's remaining two arguments. Accordingly, I **REVERSE** the Commissioner's decision and **REMAND** this action pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 27th day of September, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge